UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| UNITED STATES OF AMERICA | : | |
| --- | --- | --- |
| | : | |
| v. | : | 1:95-cr-89-04 / 1:00-cv-342 |
| | : | *Edgar* |
| BRYANT A. COOK | : | |

**MEMORANDUM**

**I.**     **Introduction**

On February 11, 2005, this Court issued a memorandum and order denying in part the motion to vacate, set aside or correct sentence filed by petitioner Bryant A. Cook ("Cook") pursuant to 28 U.S.C. § 2255. [Doc. No. 32]. Specifically, the February 11, 2005 memorandum and order found that six of the nine issues raised by Cook in his § 2255 motion were without merit and dismissed them. The Court, however, found that the three remaining issues could not be summarily resolved and directed the government to file a brief responding to those three issues. *Id.* Those three issues are: (1) Cook's claim that, in light of the decision in *United States v. Dale*, 178 F.3d 429 (6th Cir. 1999), the district court committed plain error when it sentenced Cook to life imprisonment under 21 U.S.C. § 841(b)(1)(A) for possession of cocaine base ("crack") based upon the general jury verdict; (2) Cook's claim that his trial counsel rendered ineffective assistance at sentencing based upon his failure to vigorously argue the law dealing with the general verdict issue; and (3) Cook's claim that his appellate counsel rendered ineffective assistance on direct appeal when he failed to raise the general verdict issue; namely, *United States v. Dale*, 178 F.3d 429 (6th Cir. 1999).

1

The government has filed its response to Cook's § 2255 motion. [Doc. No. 39]. Further, while the government's response was pending, Cook filed a *pro se* motion for reconsideration [Doc. No. 33] and an unsigned *pro se* motion to supplement his pending § 2255 motion. [Doc. No. 35].

Consequently, the three remaining issues in Cook's § 2255 motion [Doc. No. 1], Cook's *pro se* motion for reconsideration [Doc. No. 33] and his *pro se* motion to supplement his pending § 2255 motion [Doc. No. 35] are now ripe for review.

## II. Background

The factual background of this matter is described in detail in this Court's prior memorandum of February 11, 2005. [Doc. No. 31]. Thus, in the instant memorandum the Court will discuss only such factual details as are necessary to resolve the remaining issues before the Court.

## III. The Three Remaining Claims in Cook's § 2255 motion [Court File No. 1, 15, 29].

### A. Standard of Review

This Court must vacate and set aside the sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . ." 28 U.S.C. § 2255. Under Rule 4 of the Governing Rules, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in the case reveal the movant is not entitled to relief. If it plainly appears the movant is not entitled to relief, the Court may summarily dismiss the § 2255 motion under Rule 4.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *Green v. Wingo*, 454 F.2d at 53; *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (citation omitted)(§ 2254 case); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); see also *United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994)(applying *Brecht* to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F.2d 1039, 1041 (6th Cir.), *cert. denied*, 439 U.S. 998 (1978). To warrant relief for a nonconstitutional error requires a showing of a fundamental defect in the proceedings that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F.3d 503, 506 (6th Cir.), *cert. denied*, 116 S. Ct. 1701, 134 L.Ed.2d 800 (1996).

Further, a § 2255 motion is not a substitute for a direct appeal and it cannot do service for an appeal. *Bousley v. United States*, 523 U.S. 614, 621 (1998); *United States v. Timmreck*, 441 U.S. 780, 784 (1979); *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996); *United States v. Walsh*, 733 F.2d 31, 35 (6th Cir. 1984). Cook cannot use his § 2255 motion to relitigate the same issues

3

that were presented and decided on his direct appeal. Issues which are presented and considered on direct appeal cannot be litigated again in a § 2255 proceeding absent exceptional circumstances or an intervening change in the law. *Wright v. United States*, 182 F.3d 458, 467 (6th Cir. 1999); *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999); *Oliver v. United States*, 90 F.3d 177, 180 (6th Cir. 1996); *DuPont v. United States*, 76 F.3d 108, 110-11 (6th Cir. 1996).

**(1)** **Cook's claims of ineffective assistance of counsel**

In his § 2255 motion, Cook argues that his trial and appellate counsel rendered ineffective assistance when they failed to raise, or vigorously argue, the general verdict issue, *i.e.*, the applicability of *United States v. Dale*, 178 F.3d 429 (6th Cir. 1999).

To establish ineffective assistance of counsel, it must be shown that counsel's performance was deficient and that the deficient performance prejudiced the defense so as to render the trial unfair and the result unreliable. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984). To satisfy the prejudice prong of the *Strickland* test, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*, 466 U.S. at 694. "The essential question is whether better lawyering would have produced a different result." *Ward v. United States*, 995 F.2d 1317, 1321 (6th Cir. 1993). Thus, the Court must focus on whether counsel's errors, if any, have likely undermined the reliability of and confidence in the result. *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L.Ed.2d 203 (1985). With regard to *Strickland* the Sixth Circuit has stated:

> To show deficiency, the defendant must identify specific "acts or omissions [that] were outside the wide range of professionally competent assistance." [*Strickland*, 466 U.S.] at 690. To show prejudice, the defendant must establish a "reasonable probability that,

4

> but for counsel's unprofessional error, the result of the proceeding would have been different." *Id.* at 694. This court has read *Strickland* as permitting a conclusion of ineffective assistance of counsel "only if [counsel's] performance below professional standards caused the defendant to lose what he otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992), *cert. denied*, 113 S. Ct. 2969 (1993).

*Borch v. United States*, 47 F.3d 1167, 1995 WL 7979, ** 2 (6th Cir. Jan. 9, 1995), *cert. denied*, 415 U.S. 1134, 115 S. Ct. 2016 (1995)). Further, since the failure to establish prejudice is dispositive of a claim of ineffective assistance of counsel, the Court need not address the reasonableness of counsel's behavior unless the movant can establish prejudice. *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996).

### (a) Cook's claim of ineffective assistance of his trial counsel

Cook first asserts he was denied the effective assistance of counsel when his trial counsel failed to vigorously argue the law dealing with the general verdict issue. [Doc. No. 21, pp. 9-11].

In this instance, Cook was found guilty on March 7, 1997, and was sentenced on June 16, 1997. The Sixth Circuit decision upon which Cook's claim is based, *United States v. Dale*, 178 F.3d 429 (6th Cir. 1999), was decided on May 27, 1999 – more than two years after Cook was found guilty and nearly two years after he was sentenced.

The defendant in *Dale* was charged with a single conspiracy involving both marijuana and crack cocaine. *Id.* at 431. However, although the jury was given a specific unanimity instruction, it was given only a general verdict form on which it returned a verdict finding Dale guilty of the conspiracy. *Id.* at 432. In his direct appeal, Dale argued that based upon the specific unanimity instruction, the jury could have found that he conspired to distribute only marijuana, rather than both

5

drugs. *Id.* at 431. Dale would have received a substantially lower sentence if the conspiracy involved only marijuana. *Id.* at 432.

The Sixth Circuit held that under the circumstances of Dale's case, the use of the general verdict was plain error and that "when [a] jury returns a general verdict to a charge that a conspiratorial agreement covered multiple drugs, the defendant must be sentenced as if he distributed only the drug carrying the lower penalty." *Id.* However, with regard to its holding in *Dale,* the Sixth Circuit stated that ". . . neither the Sixth Circuit nor the Supreme Court has directly addressed the issue at hand . . ." *Id.* Thus, although several other circuit courts had decided the issue, *Id.* at 431 n.1, at the time of Cook's conviction and sentencing, *Dale* was not the law in the Sixth Circuit.

In *Ballard v. United States*, 400 F.3d 404 (6th Cir. 2005), the defendant, Ballard, and a co-defendant, Johnson, were charged with conspiracy to possess with intent to distribute cocaine, cocaine base ("crack") and marijuana. *Id.* at 405. Ballard was found guilty on a general verdict form and she received a sentence that was higher than the sentence which would have been imposed had she been convicted of a conspiracy which involved marijuana. *Id.* at 406. Shortly, thereafter, in a separate trial, Johnson was convicted of the same offense. *Id.*

Ballard's conviction and sentence were upheld on direct appeal. *Id.* at 407. Subsequently, she filed a § 2255 motion to vacate sentence asserting, *inter alia*, that she was denied the effective assistance of trial and appellate counsel because they failed to make any legal argument relating to the case law established in the decision in *United States v. Dale*, 178 F.3d 429 (6th Cir. 1999). *Id.*

The Sixth Circuit noted that the holding in *Dale* was not in effect at the time of Ballard's trial, but had been decided by the time of her direct appeal. *Id.* at 408. The Sixth Circuit stated that

6

it "do[es] not require attorneys to foresee changes in the law. . . ." *Id.* However, according to the Sixth Circuit, ". . . once a change in the law . . . does come about, we do expect counsel to be aware of it." *Id.* (citing *Johnson v. United States*, 520 U.S. 461, 468, 117 S. Ct. 1544, 137 L.Ed.2d 718 (1997)). Further, in her brief before the Sixth Circuit, Ballard alleged that her appellate attorney was aware that Johnson's attorney had successfully raised an argument based upon *Dale* – having even reviewed the brief on appeal submitted to the Sixth Circuit submitted by Johnson's appellate counsel – but still failed to raise any argument/issue based upon *Dale*. *Id.* at 408-409. Thus, the Sixth Circuit concluded that the failure of Ballard's counsel to forego an argument that was not only available, but had actually been successfully used by Ballard's co-defendant on appeal constituted the ineffective assistance of counsel. *Id.* at 409-411.

As noted previously, *Dale* was not decided until more than two years after Cook was convicted and nearly two years after he was sentenced. Further, Cook's trial counsel, R. Dee Hobbs, was not Cook's appellate counsel. As the government stated in its response to Cook's § 2255 motion, [Doc. No. 39-1], Cook's "[t]rial counsel, R. Dee Hobbs, was relieved after [Cook] was sentenced because [Cook] expressed dissatisfaction with Mr. Hobbs. Attorney David B. Hill was thereafter appointed to represent [Cook] on appeal." *Id.* at p. 18.

Further, attached to the government's response to Cook's § 2255 motion [Doc. No. 39-1] is the affidavit of Cook's trial counsel, R. Dee Hobbs, which states in pertinent part that "I am familiar with the decision of the Sixth Circuit in *United States v. Dale*, 178 F.3d 429 (6th Cir. 1999). Both the trial in *Dale* and the eventual opinion from the Sixth Circuit came after Mr. Cook was tried in March of 1997 . . . ." [Doc. No. 39-2, ¶ 5].

7

In this instance, the decision/holding in *Dale* came well after Cook's trial and sentencing. Thus, because any argument based upon the holding in *Dale* was not available to trial counsel at either Cook's trial or sentencing, trial counsel's performance in failing to foresee the Sixth Circuit's eventual holding in *Dale* did not constitute deficient performance pursuant to *Strickland*, 466 U.S. at 688, 104 S. Ct. 2052. *Ballard*, 400 F.3d at 409-409.

Thus, the Court concludes that trial counsel's performance with regard the issue of the general verdict, *i.e.*, *United States v. Dale*, 178 F.3d 429 (6th Cir. 1999), was not deficient. *Strickland*, 466 U.S. at 687-88, 104 S. Ct. 2052. Accordingly, the Court finds that this claim of ineffective assistance lacks merit and will be **DISMISSED**.

**(b) Cook's claim of ineffective assistance of his appellate counsel.**

Cook further asserts he was denied the effective assistance of counsel when his appellate counsel failed to raise the issue of the plain error committed by this Court at sentencing in his direct appeal; namely, that his appellate counsel failed to raise any argument based upon the holding in *Dale* in Cook's direct appeal to the Sixth Circuit. [Doc. No. 21, p. 24 - 25].

In this instance, Cook's direct appeal to the Sixth Circuit was decided on May 25, 1999. *United States v. Rooks*, 181 F.3d 105, 1999 WL 3578930 (6th Cir. May 25, 1999), *cert. denied*, 528 U.S. 1126, 120 S. Ct. 208, 145 L.Ed.2d 831 (2000). The Sixth Circuit reached/issued its decision in *United States v. Dale*, 178 F.3d 429 (6th Cir. 1999), on May 27, 1999, two days after it decided Cook's direct appeal. Thus, for the same reasons that the performance of Cook's trial counsel was not deficient in failing to anticipate and rely on the decision/holding in *Dale*, the performance of Cook's appellate counsel was not deficient in failing to anticipate or rely on the decision/holding in *Dale* as an issue in Cook's direct appeal to the Sixth Circuit. Specifically, the performance of

8

Cook's counsel on appeal was not deficient in light of *Strickland*, 466 U.S. at 687-88, 104 S. Ct. 2052, when appellate counsel failed to foresee the change in the law brought about by *Dale* and raise that issue in Cook's direct appeal. *Ballard*, 400 F.3d at 409-409.

Thus, the Court concludes that appellate counsel's performance with regard the issue of the general verdict, *i.e.*, *United States v. Dale*, 178 F.3d 429 (6th Cir. 1999), was not deficient. *Strickland*, 466 U.S. at 687-88, 104 S. Ct. 2052. Accordingly, the Court finds that this claim of ineffective assistance lacks merit and will be **DISMISSED**.

### (2) Cook's claim of plain error at sentencing

Cook claims, in light of the decision in *United States v. Dale*, 178 F.3d 429 (6th Cir. 1999), this Court committed plain error when it sentenced him to life imprisonment under 21 U.S.C. § 841(b)(1)(A) for cocaine base ("crack") based upon a general jury verdict.

In *Dale*, the indictment charged the defendant "with a single conspiracy to distribute both marijuana and crack . . ." *Id.* at 431. At trial, the jury was given a specific unanimity instruction and returned a general verdict finding Dale guilty of conspiracy. *Id.* at 432. Further, as the Sixth Circuit noted it its opinion:

> . . . Dale [wa]s . . . a crack addict who has repeatedly bought and sold drugs . . . and although he was known to use both crack and marijuana, the majority of the evidence about his . . . distribution related to marijuana . . .

*Id.* at 431.

On direct appeal, Dale argued that based upon the specific unanimity instruction, the jury could have found that he only conspired to distribute marijuana, rather than both drugs. *Id.* The Sixth Circuit further noted that under the facts of the case, Dale's:

9

> . . . maximum sentence for a conspiracy to distribute marijuana [wa]s five years, 21 U.S.C. § (b)(1)(D), while a conspiracy to distribute crack would yield a forty-year maximum sentence, 21 U.S.C. § 841(b)(1)(B) . . .

*Id.* at 432.

Under the facts of Dale's case, the Sixth Circuit held that the use of the general verdict was plain error because it could have resulted in a manifest miscarriage of justice. *Id.* More specifically, the Sixth Circuit stated that "when the jury returns a general verdict to a charge that a conspiratorial agreement covered multiple drugs, the defendant must be sentenced as if he distributed only the drug carrying the lower penalty." *Id.*

In this instance, Count I of the Second Superseding Indictment charged Cook with a conspiracy to distribute multiple drugs – namely, cocaine hydrochloride, cocaine base (crack) and marijuana. [Case No. 1:95-cr-98-04, Court File No. 65]. The jury did receive a specific unanimity instruction, when it was instructed:

> Count 1 lists three different controlled substances . . . cocaine hydrochloride, powder cocaine, cocaine base, crack, and marijuana. In order to find a defendant guilty, you do not have to find that the conspiracy involved all three controlled substances. You may return a verdict of guilty if the conspiracy involved one or more of these controlled substances. The government is required to prove that there was a conspiracy as to at least one of the specified controlled substances. In order to find a defendant guilty, all twelve members of the jury, however, must unanimously agree as to which particular controlled substance was involved in the conspiracy. If you are not able to reach unanimous agreement on the controlled substances, then you should return a verdict of not guilty.

[Case No. 1:95-cr-98-04, Court File No. 271, p. 797]. Moreover, the jury returned a general verdict in which it ". . . unanimously f[ound] the defendant, Bryant Cook, . . . guilty of the offense charged in Count 1 of the second superseding indictment." *Id.* at 804.

10

As previously noted, in *Ballard v. United States*, 400 F.3d 404 (6th Cir. 2005), the defendant was charged with conspiracy to possess with intent to distribute cocaine base, cocaine and marijuana. *Id.* at 405. She was found guilty of the conspiracy charge – the jury had been given a general verdict form – and received a sentence which was higher than the sentence which would have been imposed had the conspiracy conviction been for a conspiracy involving marijuana. *Id.* at 406. Ballard's sentence was based upon the trial court's determination at sentencing, including the evidence adduced at trial and a pre-sentence report that Ballard was involved in a conspiracy which involved only the distribution of cocaine. *Ballard*, 400 F.3d at 406.

After her conviction and sentence were upheld on direct appeal, Ballard filed a § 2255 motion to vacate sentence asserting, *inter alia*, that she was denied the effective assistance of trial and appellate counsel because they failed to raise any legal argument concerning the case law established in the decision in *United States v. Dale*, 178 F.3d 429 (6th Cir. 1999). *Id.*

In determining whether Ballard was improperly sentenced in light of the holding in *Dale*, the Sixth Circuit applied a plain error standard of review. *Ballard*, 400 F.3d at 409 (citing *United States v. Cleves*, 299 F.3d 564, 567-68 (6th Cir. 2002)). The plain error standard, which is narrow in scope, involves "(1) a finding of error (2) that is plain and (3) that affects [a] defendant's substantial rights." *Id.* Further, on a plain error review, even all three of the aforementioned factors are found to be present, a defendants sentence will be reversed only if the plain error "'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" *Id.* (citing *Cleves*, 299 F.3d at 568).

Applying the three factor test set forth above, the Sixth Circuit found that it was plain error to sentence Ballard on the basis of a general verdict form which did not ask the jury to indicate

11

which drug quantity or type it had unanimously agreed upon in finding the defendant guilty. *Ballard*, 400 F.3d at 409. The Sixth Circuit further found that the plain error did "seriously affect[] the fairness, integrity, or public reputation of judicial proceedings. *Id.* at 410 (citing *Cleves*, 299 F.3d at 568). Specifically, the Sixth Circuit found that

> there was no overwhelming evidence to support the trial court's determination that Ballard should be sentenced as though the jury found her guilty of conspiring to distribute cocaine, . . . the trial court's use of a general verdict in sentencing the defendant led to "a manifest miscarriage of justice."

*Id.* (citing *Dale*, 178 F.3d at 432). Thus, the Sixth Circuit found that because a rational jury could have found Ballard guilty of a conspiracy to distribute marijuana and cocaine, she was entitled to § 2255 relief. *Id.*

In this instance, the clear majority of the evidence presented at Cook's trial related to cocaine base ("crack"). As Cook's trial counsel stated in his Affidavit:

> 5. I am familiar with the decision of the Sixth Circuit in *United States v. Dale*, 178 F.3d 429 (6th Cir. 1999). Both the trial in *Dale* and the eventual opinion from the Sixth Circuit came after Mr. Cook was tried in March of 1997. With regard to Mr. Cook's alleged involvement in this matter, the vast majority of evidence pertained to the production and sell [sic] of crack cocaine . . .

[Doc. No. 39-2]. The Court further notes that its opinion upholding Cook's conviction and sentence on his direct appeal, the Sixth Circuit stated:

> Christopher Rooks, Bryant Cook, and Terry Patterson appeal their jury convictions and sentences for conspiracy to possess with intent to distribute crack cocaine (all) . . . .
>
> Terry Patterson and Christopher Rooks led a drug conspiracy to distribute crack cocaine from 1991 to 1993. The drug conspiracy also included Bryant Cook, among others. Patterson and Rooks would receive cocaine from California and convert it into "crack" to sell in Chattanooga, Tennessee. Several witnesses testified at both trials that they cooked cocaine into crack

12

> and retrieved money earned by street-level dealers for Patterson and Rooks. Others testified that Cook converted the cocaine into crack . . .

*United States v. Rooks*, 181 F.3d 105, 1999 WL 357830, ** 1 (6th Cir. May 25, 1999)(per curiam).

Nevertheless, although the clear majority of the evidence adduced at Cook's trial related to cocaine base, "crack," there was evidence presented from which a reasonable juror could find that the conspiracy involved marijuana as well as "crack" cocaine.

During Cook's trial, Kimberly L. Bonds of Chattanooga, Tennessee, testified as a witness for the government. [Case No. 1:95-cv-89; Doc. No. 230, Transcript, pp. 471-498]. Ms. Bonds testified that early in 1993 she moved into the apartment of Leon Rooks. *Id.* at pp. 472-73. Mr. Leon Rooks was the father of Cook's co-defendant, Christopher Shawn Rooks. *Id.* at p. 473. While living in Leon Rook's apartment, Bonds also met one of his guests, Bryan Cook, who Bonds came to know as B. *Id.* at p. 474.

Bonds testified that while living in Leon Rook's apartment she observed B and another individual, Kevin, cooking cocaine into "crack" cocaine. *Id.* at pp. 476-77. Bonds also testified that she regularly shipped packages via United Parcel Service ("UPS") for B. *Id.* She stated that B would give her $100 and tell her he wanted to ship some baby clothes through UPS. *Id.* Bonds testified that by that time she was very well acquainted with B and he had never mentioned having any babies to her. *Id.* at pp. 477-78. Bonds testified that she knew that B was lying to her when he stated he was shipping baby clothes to California via UPS. *Id.* at p. 478.

Ms. Bonds testified that in February 1993, Shawn – Christopher Shawn Rooks – invited her to the apartment – the Lakeshore apartment – he was sharing with his brother Kirk. *Id.* at p. 480. Bonds testified that B and Shawn were regularly at the Lakeshore apartment along with a group of men, primarily from California, who referred to themselves as the "boys in the hood." *Id.* at p. 481.

13

Bonds testified that while she was present at the Lakeshore apartment, she frequently overheard conversations about drug activity. *Id.* Bonds stated she also observed money, a pistol and a safe at the Lakeshore apartment. *Id.* at p. 483.

Bonds further testified that at some point in time later on she rented an apartment for B – the Olive Street apartment – and on occasion, Bonds stated she saw the same safe she had seen in the Lakeshore apartment in the Olive Street apartment. *Id.* at pp. 483-84. Bonds testified that when she rented the apartment, B told her the apartment was for Shawn, the boys in the hood, and himself. *Id.* at p. 485. She stated that B told her that the Olive Street apartment was to be used for drug activity. *Id.* On at least two occasions, Bonds received the rent money for the Olive Street apartment from B. *Id.*

In addition, Bonds stated that after renting the Olive Street apartment, she began living there with Shawn, B and the boys in the hood. *Id.* at p. 486. Bonds testified she observed drugs at the Olive Street apartment; namely, "crack" cocaine and marijuana. *Id.* at p. 487. Bonds further testified that she was present in the Olive Street apartment when cocaine was being "cooked" into "crack" cocaine. *Id.* at p. 488. Bonds also admitted that she made sales of "crack" for B to at least three different customers. *Id.* at p. 489.

Finally, Bonds also testified that while living at the Olive Street apartment, she was also involved in a marijuana transaction with B. *Id.* at p. 490. Bonds stated that she was approached by a man who asked if she knew anyone who had some "reefer." *Id.* at p. 490. After Bonds told the man she would get back with him, she spoke with B who told her to set up a meeting with the man the next day. *Id.* at p. 491. Bonds did set up a meeting for the following day. *Id.* Bonds

14

testified that B was present at the meeting and sold about $900 worth of reefer/marijuana to the man. *Id.* at p. 491.

Based upon the above described testimony, the Court finds that while the majority of the testimony does relate to a conspiracy involving "crack" cocaine, there is enough evidence from which a reasonable jury could find that Bryant Cook was involved in a conspiracy to distribute cocaine base ("crack") *and* marijuana. Due to the jury's general verdict of guilty on the conspiracy charge in count 1,Cook, due to his prior felony convictions would – and did – receive a mandatory life sentence under 21 U.S.C. § 841(b)(1)(A) based upon the Court's finding that the conspiracy involved cocaine base ("crack"). However, if the conspiracy involved only marijuana, based upon the jury's general verdict and the decision in *Dale*, Cook's maximum sentence under 21 U.S.C. § 841(b)(1)(D) would be ten (10) years. Hence, the Court finds that Cook's sentence was plain error in light of the decision in *United States v. Dale*, 178 F.3d 429 (6th Cir. 1999). Moreover, based upon the disparity in the sentences, the plain error which occurred when Cook was sentenced based upon a general verdict which did not require the jury to indicate the drug type(s) which they had unanimously agreed upon did "seriously affect the fairness integrity, or public reputation" of Cook's trial." *Ballard*, 400 F.3d at 410.

Finally, the Court notes that there is no question that the decision in *Dale* does apply to Cook's case. As noted above, the Sixth Circuit affirmed Cook's sentence and conviction on direct appeal on May 25, 1999 – two days before the Sixth Circuit issued its decision in *Dale*. However, the Supreme Court did not deny Cooks petition for a writ of *certiorari* until January 18, 2000. *United States v. Rooks*, 181 F.3d 105, 1999 WL 357830 (6th Cir. May 25, 1999)(per curiam), *cert. denied*, 528 U.S. 1126, 120 S. Ct. 957, 145 L.Ed.2d 831 (2000). Thus, *Dale* was decided before

15

Cook's conviction and sentence became final. *See Clay v. United States*, 537 U.S. 522, 123 S. Ct. 1072, 1073, 155 L.Ed.2d 88 (2003)(for purposes of 28 U.S.C. § 2255, a conviction becomes "final" when either the Supreme Court "affirms a conviction on the merits on direct review or denies a petition for a writ of *certiorari*, or when the time for filing a *certiorari* petition expires.")

Accordingly, Cook's claim that, in light of the decision in *United States v. Dale*, 178 F.3d 429 (6th Cir. 1999), this Court committed plain error when it sentenced him to life imprisonment under 21 U.S.C. § 841(b)(1)(A) for cocaine base ("crack") based upon a general jury verdict [Doc. No. 1] has merit and will be **GRANTED**. Cook is entitled to relief under § 2255 on the merits of this claim.

Therefore, pursuant to 28 U.S.C. § 2255, the sentence imposed by this Court on June 16, 1997 will be **VACATED**. Further, in *Dale*, while the Sixth Circuit found plain error, the court found that based upon the decision of the Second Circuit in *United States v. Orozco-Prada*, 732 F.2d 1076 (2d Cir.), *cert. denied*, 469 U.S. 845, 105 S. Ct. 154, 83 L.Ed.2d 92 (1984), it would "fashion a remedy . . . by withholding judgment on the sentence in order to allow the government to elect whether to consent to [resentencing] or to retry the case." *Dale*, 178 F.3d at 434. In *Orozco-Prada*, the Second Circuit found that the evidence adduced at trial was sufficient to support the defendant's conviction, but that based upon the jury's general verdict, there was no way to tell whether the defendant should be sentenced under 21 U.S.C. § 841(b)(1)(A) or 21 U.S.C. § 841(b)(1)(B). *Orozco-Prada*, 732 F.3d at 1083. Hence, the Second Circuit held that it would withhold any judgment for thirty (30) days and that (1) if during that time period the government consented to a resentencing under 21 U.S.C. § 841(b)(1)(B), the court would remand for resentencing or (2) if the

government did not consent, Orozco-Prada's conviction would be vacated and the case would be remanded for a new trial.

Accordingly, based upon *Dale*, 178 F.3d at 434 and *Orozco-Prada*, 732 F.3d at 1083, it will be **ORDERED** that within thirty (30) days of the date of this order, the government shall notify the Court: (1) whether it wishes to consent to have Cook resentenced pursuant to 21 U.S.C. § 841(b)(1)(D) as if he had been convicted of a conspiracy involving marijuana only; or (2) if the government does not wish to consent to resentencing, whether it wishes to have the Court vacate Cook's sentence and conviction and proceed to retry him on Count 1.

**IV.**     **Cook's Motion for Reconsideration** [Doc. No. 33].

Cook has filed a *pro se* motion for reconsideration of this Court's earlier order dismissing six of the nine issues raised in his § 2255 motion [Doc. No. 33]. In his motion for reconsideration, Cook does not address the merits of any of the six claims, does not present any additional evidence, nor does he present any argument that this Court erred in deciding the six issues.

Rather, the sole ground presented by Cook in his *pro se* motion is that he has now been able to "partially retain" counsel. [Doc. No. 33, p. 3]. Solely on that ground, Cook requests that this court reconsider the denial of the six issues and allow the government one hundred and twenty (120) days to respond to those six issues in order to allow him to "fully" retain private counsel. *Id.*

The Court notes that allowing a *pro se* defendant to "fully" retain private counsel is not one of the potential grounds for relief mentioned in either Fed. R. Civ. P. 59(e) or Fed. R. Civ. P. 60(b). Accordingly, Cook's *pro se* motion for reconsideration [Doc. No. 33] will be **DENIED**.

17

**V.     Cook's Motion to Supplement his § 2255 Motion** [Doc. No. 35].

Cook has submitted an unsigned *pro se* motion to supplement his § 2255 motion. [Doc. No. 35]. In his motion to supplement, Cook seeks to raise a new issue not raised in his prior § 2255 motion. In this instance, Cook filed his motion to supplement his § 2255 motion on April 4, 2005 [Doc. No. 35], more than five (5) years after he filed his original § 2255 motion [Doc. No. 1]. Moreover, on September 19, 2001, this Court ordered that Cook's original and supplemental memoranda in support of his § 2255 motion be returned to him and that he file a memorandum in support of his § 2255 motion which complied with Rule 2 of the Rules on Motion Attacking Sentence under Section 2255. [Doc. No. 19]. Cook filed this motion on October 19, 2001. [Doc. No. 21]. Further, Cook filed a motion to supplement and amend his § 2255 motion on June 24, 2002 [Doc. No. 29], which the Court granted [Doc. No. 31, 32]. Finally, on February 11, 2005, the Court summarily dismissed six of the nine issues raised by Cook in his § 2255 motion as amended [Doc. No. 1, 5, 29]. Thus, Cook now seeks, via a motion to supplement his § 2255 motion filed several years after his filed his original § 2255 motion and nearly sixty (60) days after this Court's order summarily dismissing a significant number of the issues raised in Cook's original § 2255 motion, as previously amended. Thus, the Court finds that Cook's *pro se* motion to supplement his § 2255 motion constitutes a second or successive § 2255 motion.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") restricts the rights of prisoners to file more than one motion under 28 U.S.C. § 2255 and requires that a prisoner get permission from the court of appeals prior to filing a successive § 2255 motion. *In re Hanserd*, 123 F.3d 922, 924 (6th Cir. 1997); *In re Sims*, 111 F.3d 45, 46 (6th Cir. 1997)(per curiam). More specifically, a second or successive § 2255 motion is only permitted if the Court of Appeals

"certifies that the defendant has presented newly discovered evidence or a new and retroactive rule of constitutional law that was previously unavailable." *United States v. Peterman*, 249 F.3d 459, 461 (6th Cir.), *cert. denied*, 534 U.S. 1008, 122 S. Ct. 493, 151 L.Ed.2d 404 (2001). Cook has presented no such certification from the Sixth Circuit, nor has he even alleged that he obtained such certification in his *pro se* motion to supplement.

Accordingly, Cook's unsigned *pro se* motion to supplement [Doc. No. 35] will be **DENIED**.

## VI. Conclusion

For the reasons set forth in detail above:

(1) Cook's *pro se* motion for reconsideration [Doc. No. 33] will be **DENIED**;

(2) Cook's unsigned *pro se* motion to supplement [Doc. No. 35] will be **DENIED**;

(3) The claim in Cook's § 2255 motion that his trial counsel rendered ineffective assistance based upon his failure to argue the general verdict issue at Cook's sentencing in light of the decision in *United States v. Dale*, 178 F.3d 429 (6th Cir. 1999)[Doc. No. 1] is meritless and will be **DISMISSED**;

(4) The claim in Cook's § 2255 motion that his appellate counsel rendered ineffective assistance based upon his failure to argue the general verdict issue in Cook's direct appeal in light of the decision in *United States v. Dale*, 178 F.3d 429 (6th Cir. 1999)[Doc. No. 1] is meritless and will be **DISMISSED**; and,

(5) Cook's claim that, in light of the decision in *United States v. Dale*, 178 F.3d 429 (6th Cir. 1999), this Court committed plain error when it sentenced him to life imprisonment under 21 U.S.C. § 841(b)(1)(A) for cocaine base ("crack") based upon a general jury verdict [Doc. No. 1] has merit and will be **GRANTED**. Cook is entitled to relief under § 2255 on the merits of this claim and pursuant to 28 U.S.C. § 2255, the sentence imposed by this Court on June 16, 1997 will be **VACATED** subject to the following:

19

Pursuant to the decisions in *United States v. Dale*, 178 F.3d 429, 434 (1999) and *United States v. Orozco-Prada*, 732 F.2d 1076 (2d Cir.), *cert. denied*, 469 U.S. 845, 105 S. Ct. 154, 83 L.Ed.2d 92 (1984), it will be further **ORDERED** that:

(a) final judgment on Cook's § 2255 motion will be withheld by this Court for a period of thirty (30) days from the date of this order; and,

(b) within thirty (30) days of the date of this order, the government shall notify the Court: (1) whether it wishes to consent to have Cook resentenced pursuant to 21 U.S.C. § 841(b)(1)(D) as if he had been convicted of a conspiracy involving marijuana only; or (2) if the government does not wish to consent to resentencing, whether it wishes to have the Court vacate Cook's sentence and conviction and proceed to retry him on Count One.

A separate order shall enter.

>                     */s/ R. Allan Edgar*
>                     R. ALLAN EDGAR
>          CHIEF UNITED STATES DISTRICT JUDGE